FANNIN COUNTY, GEORGIA, Gilmer County, Georgia, Blue Ridge Concrete and Supplies, Inc., and Southeastern Stone Wholesalers, Inc., d/b/a Zyrian Stone, Petitioners,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Respondents,

CSX Transportation, Inc., Intervenor.

Nos. 88–8076, 88–8234.

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1988.

John P. Tucker, Jr., Atlanta, Ga., Oliver Harris Doss, Jr., Blue Ridge, Ga., for petitioners.

Robert S. Burk, I.C.C., Robert J. Grady, Washington, D.C., for I.C.C.

Edwin Meese, U.S. Atty. Gen., Dept. of Justice, J. Carol Williams, Dept. of Justice, Lands Div., Appellate Section, Washington, D.C., for U.S.

Patricia Vail, Legal Dept., CSX Transp., Inc., Charles M. Rosenberger, Jacksonville, Fla., Lawrence H. Richmond, CSX Transp., Inc., Baltimore, Md., for CSX Transp.

Before HILL and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is a petition for review by the named petitioners seeking a review and vacation of a decision by the Interstate Commerce Commission, served January 8, 1988 which the Commission concedes is a final order, and of a decision served February 9, 1988, which the Commission contends is not reviewable because it is not a final decision by the Commission.[1]

The decisions complained of deal with an effort by the intervening railway system, CSX Transportation, Inc., (CSXT) to abandon and remove the tracks from 8.1 miles of its present direct route from Atlanta, Georgia north to Blue Ridge, Georgia. The mileage at issue extends southward from the city limits of Blue Ridge. Petitioners concede that no traffic has passed over the targeted mileage for some six or seven years. This so-called de facto abandonment by the shipping public is the basis upon which CSXT successfully importuned the Interstate Commerce Commission ("ICC") to authorize its formal abandonment.

## I. APPEAL NO. 88-8076

### A. *Course of Proceedings*

On August 29, 1987, CSXT filed a notice of exemption with the ICC seeking to abandon 8.1 miles of railroad track between Blue Ridge and White Path in Fannin and Gilmer Counties, Georgia, in which notice CSXT relied on the Commission's exempt abandonment regulations at 49 C.F.R. § 1152.50 (1987).[2] The notice of exemption was duly published in the Federal Register. Following several procedural moves by both petitioners as interested parties and CSXT as intervenor, the matter came on for a final decision by the Commission.

The petitioners filed verified and unverified documents supporting their position in opposing the abandonment. These dealt generally with the professed need of local businesses and governmental units for direct, rather than circuitous, routing from points north of Blue Ridge to most of the rest of the state of Georgia and the professed need for direct routing from the south of White Path, Georgia for moving freight to points north. They also strongly complained that removing the tracks and right-of-way would have a serious adverse

---

1. The jurisdiction of this Court in such proceedings is outlined in 18 U.S.C. § 2321 and § 2342.

2. The regulation, as here pertinent, provides:
   § 1152.50 Exempt abandonments and discontinuances of service and trackage rights.
   (1)
   (a) A proposed abandonment or discontinuance of service or trackage rights over a railroad line is exempt from the provisions of 49 U.S.C. 10903–10905 if the criteria designated in this section are satisfied.
   (b) An abandonment or discontinuance of service or trackage rights is exempt if the carrier certifies that no local traffic has moved over the line for at least 2 years and any overhead traffic on the line can be rerouted over other lines and that no formal complaint filed by a user of rail service on the line (or a State or local government entity acting on behalf of such user) regarding cessation of service over the line either is pending with the Commission or any U.S. District Court or has been decided in favor of the complainant within the 2-year period. The complaint must allege (if pending) or prove (if decided) that the carrier has imposed an illegal embargo or other unlawful impediment to service.

   (d)

   (2) The railroad must file a verified notice using its appropriate abandonment docket number and subnumber (followed by the letter "X") with the Commission at least 50 days before the abandonment or discontinuance is to be consummated. The notice shall include the proposed consummation date, the certification required in § 1152.50(b), ...
   (3) ... If the notice of exemption contains false or misleading information, the use of the exemption is void *ab initio* and the Commission shall summarily reject the exemption notice.
   (4) Exempt abandonments and discontinuances of service and trackage rights. To address:
   (i) Environmental issues;

impact on the rural and community development. Petitioners also expressly attacked the validity of the exemption regulation as being *ultra vires* or beyond the powers of the Interstate Commerce Commission, because inconsistent with the federal laws establishing the national transportation policy.

Petitioners contended, in addition, that the notice of abandonment contained "false or misleading information" which, if true, would cause the exemption to be void *ab initio*, according to 49 C.F.R. § 1152.50(d)(3) *supra*. They also contended that should the regulation be held valid even under its provisions the Commission was obligated to consider certain requirements of 49 U.S.C. § 10903, entitled "Authorizing Abandonment and Discontinuance of Railroad Lines and Railroad Transportation." This section provides:

(a) A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter (1) of Chapter 105 of this Title may (1) abandon any part of its railroad lines; or (2) discontinue the operation of all rail transportation over any part of its railroad lines; *only if* the Commission finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance. In making the finding *the Commission shall consider whether the abandonment or discontinuance will have a serious, adverse impact on rural and community development.* (Emphasis added.)

They contend that the underscored language of § 10903 is such an integral part of the rail transportation policy that it must inform the Commission in every decision it makes in application of the exemption regulation.

Finally, petitioners contend that if the Commission actually considered the objections which they had filed its decision should be overruled because it was unsupported by substantial evidence, was arbitrary and capricious, an abuse of discretion, and not in accordance with law.

### B. *Discussion*

(1) Because the validity of the regulation under which the Commission acted is essential to the validity of any decision based on such regulation, we consider this matter initially.

As noted above, section 10903 entitled "Authorizing Abandonment and Discontinuance of Railroad Lines and Rail Transportation" provides that the ICC may order the abandonment or discontinuance of such lines

only if the Commission finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance. In making the finding, the Commission shall consider whether the abandonment or discontinuance will have a serious, adverse impact on rural and community development.

Nevertheless, as respondents and intervenor point out, 49 U.S.C. § 10505(a), directs the Commission

to exempt [from the strictures of § 10903] a person, a class of persons, or a transaction or service when the Commission finds that the application of a provision of this subtitle—

(1) is not necessary to carry out the transportation policy of section 10101a of this title; and

(2) either (A) the transaction or service is of limited scope, or (B) the application of a provision of this subtitle is not needed to protect shippers from the abuse of market power.

Respondents and intervenor contend that this provision of the statute directs the Commission to order an abandonment or termination *without* consideration of any of the concerns mentioned in section 10903. The ICC need only find that the application of section 10903 "is not necessary to carry out the transportation policy of section 10101a" and that the service "is of limited scope."

By arguing that the requirements of section 10903 be observed by the ICC in a case such as this, petitioners overlook the explicit terms of section 10505 which was enacted for the express purpose of permit-

ting the ICC to by-pass the strictures of section 10903. If regulations validly adopted by the Commission appear to eliminate some of the protections to local communities and shippers afforded by section 10903 this is the responsibility of the legislative branch, which thus far has made it clear that the Commission may by rule exempt certain classes of transportation service without compliance with the stringent requirements of section 10903. We must therefore conclude that this regulation 1152.50 is not void as *ultra vires.*

The petitioners do not contend that the regulation is void for any other reason. They do not contend that the creation of the exemptions by the Commission under its rulemaking power is arbitrary or unsupported by essential findings. In *Illinois Commerce Commission v. I.C.C.,* 787 F.2d 616, 626 (D.C.Cir.1986), the validity of this regulation was presented to the Court of Appeals for the District of Columbia. That court stated:

> In reviewing the Commission's exemption decisions, our task is to determine whether its action was arbitrary, capricious, an abuse of discretion or otherwise contrary to law. While the scope of review undoubtedly is narrow, we must satisfy ourselves that the Commission 'considered all critical aspects of the problems before it, and ... articulated a reasoned explanation for its action, including "a rational connection between the facts and the choice made"'

787 F.2d at 625, 626.

The court then said:

> One of the two findings that section 10505(a) makes a prerequisite to an exemption from operation of a provision of the Staggers Act [section 10903] is that "application of [the] provisions ... is not necessary to carry out the transportation policy of section 10101a" and "the latter section specifies the fifteen facets of the policy of the United States Government" and "[i]n regulating the railroad industry."

The court then considered "all aspects of the policy bearing on the propriety of the exemption" to determine whether the Commission had supplied "an acceptable rationale therefor."

The fifteen facets referred to by the D.C. Court are set out in 49 U.S.C. § 10101a as follows:

Section 10101a provides:

In regulating the railroad industry, it is the policy of the United States Government—

(1) to allow, to the maximum extent possible, competition and the demand for services to establish reasonable rates for transportation by rail;

(2) to minimize the need for Federal regulatory control over the rail transportation system and to require fair and expeditious regulatory decisions when regulation is required;

(3) to promote a safe and efficient rail transportation system by allowing rail carriers to earn adequate revenues, as determined by the Interstate Commerce Commission;

(4) to ensure the development and continuation of a sound rail transportation system with effective competition among rail carriers and with other modes, to meet the needs of the public and the national defense;

(5) to foster sound economic conditions in transportation and to ensure effective competition and coordination between rail carriers and other modes;

(6) to maintain reasonable rates where there is an absence of effective competition and where rail rates provide revenues which exceed the amount necessary to maintain the rail system and to attract capital;

(7) to reduce regulatory barriers to entry into and exit from the industry;

(8) to operate transportation facilities and equipment without detriment to the public health and safety;

(9) to cooperate with the States on transportation matters to ensure that intrastate regulatory jurisdiction is exercised in accordance with the standards established in this subtitle;

(10) to encourage honest and efficient management of railroads and, in particu-

lar, the elimination of noncompensatory rates for rail transportation;

(11) to require rail carriers, to the maximum extent practical, to rely on individual rate increases, and to limit the use of increases of general applicability;

(12) to encourage fair wages and safe and suitable working conditions in the railroad industry;

(13) to prohibit predatory pricing and practices, to avoid undue concentration of market power and to prohibit unlawful discrimination;

(14) to ensure the availability of accurate cost information in regulatory proceedings, while minimizing the burden on rail carriers of developing and maintaining the capability of providing such information; and

(15) to encourage and promote energy conservation.

The court in *Illinois Commerce Commission* decided that the Commission's decision fell short of the treatment required by the first prong of section 10505(a) *i.e.* that the Commission must find that "the application of the provision of section 10903(a)(1) is not necessary to carry out the transportation policy of section 10101a of this title." The court therefore remanded the matter to the Commission for further consideration. Thereafter the Commission addressed the several issues raised by the court in *Illinois Commerce Commission* and, on appeal, the D.C. Circuit rejected the contention of the petitioners in that case that the Commission had failed to comply with the mandate in the *Illinois Commerce I*, and found the regulation to be valid. *Illinois Commerce Commission and Patrick W. Simmons, Petitioners v. I.C.C. and United States of America, Respondents Association of American Railroads, Rails & Trails Conservancy, and Iowa Trails Counsel, Intervenors,* 848 F.2d 1246 (D.C.Cir.1988) (hereinafter *Illinois Commerce Commission II*). The court in *Illinois Commerce Commission II* upheld the Commission's decision. In other words it found that the Commission's adoption of the regulation met the standards announced in *Illinois Commerce Commis-*

*sion I, i.e.,* that the Commission's decision was not "arbitrary, capricious, an abuse of discretion or otherwise contrary to law." 787 F.2d at 626.

Petitioners here attack the validity of the regulation only on the ground that it is *ultra vires* because inconsistent with section 10903. This contention we have rejected above. Although the Commission's discussion in its first decision at 366 I.C.C. 85 and in its second decision at 2 I.C.C. 2d 146 (1986) pays scant attention to the provisions of section 10101a(4) ("to insure the development and continuation of a sound rail transportation system with effective competition among rail carriers and with other modes, to meet the needs of the public ..."), petitioners do not attack the validity of the regulation on this basis. Nor do they attack the validity of the regulation because of any failure by the Commission adequately to treat with concerns arising under 10101a(9) ("to cooperate with the states on transportation matters to assure that intrastate regulatory jurisdiction is exercised in accordance with the standards established in this subtitle.")

We must, therefore, conclude that the regulation is valid, as did the District of Columbia Circuit in *Illinois Commerce Commission II, supra.*

■ 2. Regulation 1152.50(b)(3) provides "if the notice of exemption contains false or misleading information, the use of the exemption is void *ab initio* and the Commission shall summarily reject the exemption notice." This, then, is one of the criteria that must be satisfied if any party contends that "the notice of exemption contains false and misleading information."

In this case petitioners did contend that the notice of exemption contained false and misleading information about the impact of the proposed abandonment on rural and community development. The Commission found either that the specific challenges by petitioners were unsupported, were adequately responded to by CSXT, or that they were irrelevant to the question of false and misleading information. The Commission carefully analyzed the environmental statement required as a part of the notice of

exemption and the report of the Commission Section of Energy and Environment (SEE) together with the documents of record filed by petitioners and concluded that "post-abandonment activity, including salvage and disposition of the right-of-way, will not have a significant impact on the quality of the human environment." Upon the record before us we cannot fault this decision. We therefore cannot overrule the commissioner's determination that: "We cannot agree that CSX's environmental report is inaccurate or misleading."

■ 3. We now come to petitioner's contention that the record before the Commission furnished insufficient evidence to support its findings. The Commission itself, although contending that it was not required to consider these issues under the exemption regulation, did, nevertheless, give some consideration to each of the concerns raised by petitioners. The fact that the Commission did so lends some weight to the petitioner's contention that even where the exemption regulation applies, the Commission is under an obligation to give consideration to "all aspects of the [rail transportation] policy bearing on the propriety of the exemption, and must supply an acceptable rationale therefor." 787 F.2d 616 at 627. The ICC, nevertheless, is not required to recanvas all aspects of the National Transportation Policy in each use of the exempt proceeding. This was required only in the rulemaking procedure by which the ICC adopted the regulation. Since, as we have held, the line has been without service for more than two years and the transaction is of limited scope and we have affirmed the action of the Commission in deciding that there were no material false or misleading statements in the Notice of Termination, the Commission was not obligated to decide whether the petitioners were entitled to the continuance of "ghost rates" or whether the abandonment and termination would have a serious adverse impact on the rural and community development.

### C. *Conclusion*

We are thus required to affirm the order of the Interstate Commerce Commission, served January 8, 1988.

## II. APPEAL NO. 88–8234

■ This brings us then to the facts relating to the second appeal. Following the service of the January 8, decision. Fannin County and Blue Ridge Concrete and Supply, Inc. jointly filed a Formal Expression of Intent to File Offer Request for Information and Request for Stay under a recently enacted procedure by the ICC in 49 C.F.R. § 1152.27 for offers of financial assistance for continued rail service in conjunction with exempt abandonments and discontinuances ___ I.C.C.2d ___ (served Dec. 21, 1987). This regulation adopted by the ICC conforms to the procedures authorized under 49 U.S.C. § 10905(b) which provides that "any rail carrier which has filed an application for a certificate of abandonment or discontinuance shall provide promptly to a party considering an offer of financial assistance ..." certain information dealing with the value of the line that is proposed to be abandoned.

This notice was filed on January 27, 1888. It therefore brought into play other regulations of the ICC requiring the intervenor to furnish certain information within a specified time to the offerors, unless waived. Based on this expression by the offerors the Commission made a second decision, bearing a service date of February 9, 1988. In the meantime, however, on February 5, petitioners had filed their notice of appeal to this court. When, thereafter, the proceedings under the Offers of Financial Assistance regulations did not satisfy the offerors, they filed a notice of appeal from the February 9 decision of the ICC.

In the meantime, however, on February 5, 1988, petitioners had obtained from this court an order staying the proceedings in No. 88–8076 pending review.

As stated in the February 9 decision by the ICC, "this decision is effective on the date served." Although decided on February 4, prior to the order of stay by this court, it did not become effective until the service date, February 9, 1988. Petitioners, therefore, claim that the second deci-

sion was invalid as being in violation of this court's stay of February 5.

Respondents and the intervenor claim that this decision was not final, and thus is not reviewable here.

Whether or not the February 9 decision is appealable as a final order, it is certainly appealable in the sense that the injured party can seek the enforcement by this Court of its stay order. Unless the February 9 decision is stayed, the petitioners must comply with the regulation within the relevantly short time periods prescribed or CSXT will be permitted to terminate and remove the line completely.

Although the relevant time involved between February 5 and February 9 is short and this court is therefore not in a position to assess the responsibility for serving the Feb. 9 decision after the stay order had been entered, it is clear that the fact that such a stay had been granted by this court made the second decision of the ICC a nullity.

Although we have concluded that the second decision of Feb. 9 was void, we refer to it in order to determine the relative positions in which the parties should be placed in the negotiations following the offer of financial assistance under 49 C.F.R. § 1152.27.

Upon remand, the Commission shall enter an order providing for the time frames as set out in its vacated second decision dated Feb. 9, 1988. For compliance with the financial assistance process, such orders shall include the provision contained in ¶ 2 of the vacated decision of Feb. 9, 1988 stating "discontinuance of service and salvage of track permitted by the Jan. 8 decision is postponed pending completion of the financial assistance process."

This case is REMANDED to the Interstate Commerce Commission for further proceedings consistent with this opinion.